May it please the Court, Justin Baxter for the appellants, Dane and Jennifer Jensen. Your Honors, I'd like to reserve five minutes for rebuttal. Okay, and the clock counts down. Thank you. Your Honors, the bank reported and verified false information for three different reasons. First, the bank admits that it made, quote, minor adjustments to the Jensen's account in response to the final dispute. It made minor adjustments to the account because it was reporting inaccurate information. Second, the bank reported and verified internally contradictory information. It reported different information to each of the three national credit bureaus, and it reported different information for Mr. Jensen and for Mrs. Jensen on the same joint account, also false information. Three, the bank reported false information because multiple bank employees instructed the Jensen's to make partial payments. Other bank employees, multiple bank employees, advised the Jensen's that making these partial payments would not adversely affect their credit, that any missed payments or partial payments would be appended to the end of the loan, and that I'm interested in what you think, what were your clients understanding? What does the record show about appending payments to the end of the loan? Would they bear 20 years of interest? So, Your Honor, the Jensen's were confused and concerned, and so they actually called the bank directly and asked for guidance. And they spoke with two bank employees, a man named Byron and his supervisor named Jenny, who confirmed over the phone that the way they read the documents was consistent with the way the first bank employee had explained the documents. But where in the documents do you see that? I don't, I mean, I understand your argument that there's some sort of parole agreement about the documents, but when I read the documents, the TPP, as you call it, the document that deals with the temporary moratorium, is silent on this issue. And the underlying loan document says that accepting less than the full amount does not stop the bank from pursuing any remedies. So it seems to me that what these documents together say is that you, for a couple months, they'll take less than the full amount, and then they can go back to the full remedies. Why isn't that the most reasonable reading of the documents? Well, Your Honor. I don't see anything in the documents suggesting that you get to wait 30 years to make these missed payments. Well, that's what the bank employees explained to the Jensen's. Perhaps, but if the documents indicate to the contrary, how could the bank employees vary the contract? Your Honor, so the, I'm citing to the excerpt of record. When I look at the note, it has the normal provision that says we can accept less than the full amount. That doesn't give up our remedies. Now, I think that TPP does give up their remedies for accepting less than the full amount for those three months, but doesn't it remain a deficiency that's subject to the note? I beg Your Honor's pardon. I mean, I'm assuming now that there actually were these statements by the bank employees about how they interpreted the document, but my question is, can those interpretations vary the language of the documents? Right. Your Honor, I apologize. I'm a bit flummoxed with my documents for some reason. My response is that if I could find the site and the record, there was language in the documents that were sent to the Jensen's that suggested that these payments would be added to the end of the loan. Just without finding it, tell me which document you're relying on for that. It was a document that was sent to the Jensen's with the TPP, and it was basically an explanation from the bank. And that was the source of the reason Mr. Jensen contacted the bank again, just to confirm that his understanding was consistent with what he was reading and was consistent with what the first bank employee had told him over the telephone. Let me ask a question that will divert you a little bit from the document issue. As I understand it, the amount at dispute initially was relatively trivial. It was just slightly over $1,000. That's right, Judge. I mean, this ends up, this metastasizes into a horrible brouhaha. I mean, I have to say I don't understand why this is a sensible place for this to end up, over your client insisting that he didn't have to pay $1,000 until 20 years down the road. And I fold into my question Judge Hurwitz's question. Well, if you wait to pay $1,000 for 20 years, there's going to be interest on that amount. I just don't understand your client's behavior that it should turn into this long-lasting dispute and then federal lawsuit over $1,000. The source of the confusion was discrepant and varying communications from the bank. The Jensen's were receiving demands for payments as low as $1,000. But the initial demand for payment was $1,000. The Jensen's did not dispute that they owed it. The only question was when they were going to have to pay it. And they go through this long, long back and forth with the bank over not whether they owe $1,000 but when they have to pay $1,000. I have to say I don't understand the behavior. No, I understand, Your Honor. And I think the reason was it was just confusing what was the exact amount they were supposed to pay because as you ---- Well, if it was confusing about the amount they had to pay, it would have seemed to me the sensible thing to do is, okay, well, let me pay you $1,000 or whatever it is, $1,070, I think it was, right now, and then we can fight about it. Well, they also received letters saying that they needed to send $7,000. They also received letters saying that they were current. When did the $7,000 demand letter come? That came fairly late. It was further down the road. But at the outset, it was $1,070. That's correct. The first demand was $1,000 and then it would go up and then it would go down, and sometimes they received letters that said you're current on your loan. And so it was very confusing. And then following along conversations with the bank employees, Mr. Jensen would repeatedly ask just for an explanation of what do I owe and why do I owe it, and there was never a good answer or a clear answer. Are you ---- let me try to help you out. Are you thinking of the letter at ER-177? The letter that accompanies the TPP agreement? And if so, tell me where in that document it suggests that payments will be added to the end. Your Honor, that is what I had in mind. I was trying to cross-reference with my brief to find the specific language. Maybe I'm missing it, but I don't find anything in that document that suggests the payment. What it does say is at the end, any past due payments at the end of the trial period, including unpaid interest, et cetera, shall be added to your mortgage loan balance. And then the next paragraph says that we'll figure out what your monthly payment is after that. Now, maybe that suggests that it will be amortized over the rest of the loan, but I don't see anything that suggests that it will be put on the end of the loan. So, again, that is the section that I'm looking at, Your Honor. And I think that it ---- the specific sentence that helps the Jensen's is if you fulfill the terms of the trial period, we will waive all unpaid late charges at the end of the trial period. Well, but those are late charges. Those are not ---- they did waive all unpaid late charges for the ---- nobody ever charged, as I understand it, charged late charges for that three months. They said you were in arrears of the principal balance and interest that wasn't paid in those three months, right? Eventually, they waived late charges. But the late charges were imposed after the money wasn't paid in time, right? At the end of the three months, as Judge Fletcher indicated, the bank demanded  a lower amount than the amount on the loan, and they said we now want the balance for those three months, right? Correct. And they didn't say we want the balance in late charges. They said we just want the balance. Right. And then over time, when your clients didn't pay it, they added late charges. They did, but that, again, was inconsistent with ---- Well, no. It says we won't charge you late charges for the reduced amount that you paid during this time period. But they didn't say if you refused to pay it thereafter, we won't pay you late charges. So where else in this document do you get support for your position? And, again, maybe you can use some of your time while you wait for rebuttal to take a look at it. Again, I just apologize to the Court for getting flummoxed with my documents. Yes. Let's do it this way. You've got a little over four minutes left. Let's hear it from the other side. And during that period, you can organize your documents in a way that will be most effective in terms of the use of your time. I appreciate that, Judge. Thank you. May it please the Court, good morning. Danielle Hunsaker, appearing on behalf of U.S. Bank. So this case is a FCRA case, not a breach of contract case. And it's a damages case. So we have to look at what FCRA says in terms of what the damages standards are. And that's basically U.S. Bank's primary argument in this case, is the Jensen's want to focus on all kinds of stuff that the bank did or didn't do. But we have to look at all of those events in the context of what FCRA says and what damages are recoverable under that statute. Well, the bank does admit in your briefing that you provided incorrect information at least with respect to the trial period, correct? Correct. When? At some point, you told credit reporting agencies that the Jensen's were delinquent during the trial period. That happened after the Jensen's filed their disputes with the credit reporting agency. The bank got those first. We call them ACDVs. The notice from the credit reporting agencies, the bank looked at those, and the documents show that an error was made and the late reporting extended back into the trial plan. There is no evidence in the record that any late reporting was made during that trial plan period before those disputes were made. No, I understand. But at some point, there was incorrect reporting made, correct? That's what the documents show, yes. Documents show that. And as I understand the district court decision, the district judge said, well, there was a lot of accurate reporting and there was a lot of — and there was a little bit of inaccurate reporting, and they couldn't have been damaged by that. Is that your position? It is my position. Why isn't that a jury question? Well, I think there has to be evidence for the jury to reach that conclusion. And the evidence that we have of record indicates that if you have a 16-month period of delinquency that is accurate, and we're disputing over adding a month or two to that to make it a 17- or 18-month delinquency period, there cannot be any damages. And the evidence in the record on that is from two creditors that the Jensen's approached, one of them saying, we're not going to give you any credit with any late, and the other one saying, if you've got more than two months, we're not giving credit. But they're suing for emotional distress in this case. They're not suing for lost opportunity, if you will. And so why can't the Jensen's make the case to the jury that they were distressed by this incorrect reporting? Well, I think they're trying to recover both kinds of damages. Roberts. But I'm now focusing on the emotional distress. On the emotional distress issue, I think we've still got to have evidence for the jury to make a decision. And the district judge struggled with this a little bit, and you can see that in her oral decision about, so if I'm going to say that that 16-month delinquency period was accurate and there's no basis for recovering damages on that issue, and we're only talking about this couple-of-month add-on, how am I going to tell the jury that you can only consider this information? Because, of course, the Jensen's are going to want to put on a larger body of proof to give context to the jury of what this whole story was, but they're not going to be allowed to consider the vast majority of time that would be talked about. So how do you tell the jury that? The other thing is there has to be evidence in the record for a jury to make a decision. It can't be guesswork. And it's simply implausible. I mean, the only evidence that we have from the Jensen's are their declarations  They didn't want anything. Let me ask you this. I think it's in the record, and I think I know the answer, but I want to make sure I'm clear on it. When the delinquency was first reported to the credit reporting agencies, were they already delinquent? Correct. So there was an inaccurate report, but the inaccurate report, when made, was inaccurate only with respect to the length of the delinquency rather than the fact of the delinquency. They were delinquent when the report was first made. And I want to make sure I'm understanding your question about, so the timing, we're talking about when the inaccurate reporting for that extended back into the trial months? Yes. That happened after the dispute was made, after, which for Mr. Jensen was after they had cured their deficiency. For Mrs. Jensen, it was a couple of months before they cured their deficiency. But we're well a year into this dispute before that. So what I'm trying to exclude from my consideration is the possibility that the credit reporting agencies were reporting delinquencies before they ever became delinquent. But I gather they were delinquent, and the only issue was the length of time for which they were delinquent when the credit reporting agencies first reported the delinquency. Correct. Yes. The Jensens were not reported as late during the time that they were on the trial plan. They first started being reported as late after they refused to cure the delinquency. Let me ask it this way. So actually, they were delinquent. Well, let's see. I'm trying to shorten. The two months that were in error, before anybody found out about it, they were already delinquent a number of months. Is that correct? Correct. Okay. All right. I'm sorry. Go ahead. Okay. They didn't get the loan modification. Correct. The documents plainly state that if you don't get it, then we revert back to the original document, right? Correct. And they were delinquent in all but two of the months. Is that correct? Correct. So let's go back to the documents and see if you can help me with the documents. Correct. I guess my best reading of the documents is they don't specifically deal with this situation. Is that fair? I think that's not fair. Okay. So good. Tell me why not. Yeah. I mean, I think from the questioning that you had to my co-counsel or my opposing counsel is that there is clear language in the trial document that says that if you don't get a permanent modification, your original loan documents will control. It also says that we're not waiving our right to collect your original loan payments by giving you this small respite of time to make a smaller loan payment so that we can figure out whether you qualify for permanent relief. That's stated several times in there. We're not waiving the loan contract unless we give you a modification. Right. And he didn't get a modification. And he didn't get a modification. So tell me, I guess my question is this. Isn't it consistent with these documents? I'm not sure it's consistent with your opponent's position, but isn't it consistent with these documents that you just add the unpaid amount to the loan balance and amortize it over the course of the next, over the rest of the? There is nothing in the documents that say that that happens. Well, it says it gets added to the unpaid loan balance. What does that mean? So I don't think it says that. Well, I'm looking at the letter that your opponent was, that I referred your opponent to at ER-177. Doesn't it say on the second page of that letter that if we don't make a deal, the back payments will be added to the unpaid loan balance? So I'm looking, I have the, I am looking at ER-136 through. Yeah, look at 177. Okay, hold on. No, 178, I'm sorry. Right. Any past due amounts at the end of the trial period, including lots of things, will be added to your mortgage loan balance, and that's called past due arrearage amount. If it's added to the mortgage loan balance, how is it then treated? See, I would normally think if I had an amount added to my mortgage loan balance, it would get amortized over the course of the mortgage loan. Yeah. And so that paragraph, as we've explained in our briefing, tells the Jensen's what to expect if you get a permanent modification. If you get a permanent modification, we're going to look at your loan status. We're going to see if there's any, if there are any arrears under the original contract that you're under for your loan. We will add that to the back end of your loan, or we'll add that to the loan balance. We'll recalculate it. We'll give you a new payment amount and a new loan term. And that makes more sense, perhaps, in the more common context when this comes up, when a borrower is already in arrears when they apply for modification relief. More often than not, that's what happens. A borrower is already a few thousand, $10,000, $20,000 behind. They can't get caught up, so they need a loan modification. And this provision tells them that if they're granted that kind of relief, this is how we cure the problem that you're in. So you don't think, in your reading, past due amounts doesn't deal with the reductions made during the trial period. It deals with past due amounts before the trial period began? I think it covers the reductions from the trial plan if you're granted a modification. Because this whole thing, it's titled new principal balance for the new loan if you get a modification. Yes. So your premise for this paragraph, you read this paragraph as applying only if the modification agreement is entered into. Right. You say this has no bearing on if the loan modification request is rejected. Right. Because the contract itself tells us that if a loan modification is rejected, the original contract controls. So if this paragraph can reasonably be read your way, if that's the right reading of it, let me say it that way, it has no bearing on the situation in front of us. Correct. Okay. I understand what your position is on that. Okay. I think in the last few minutes that I have, I want to point out to the Court also that, I mean, I think we win on the issue of they were denied a loan modification and as a result when they were told that they were denied, which they were, and they were also told within, you know, a short period, I want to say less than two weeks after that they got a letter from the bank saying here's the $1,074 that you owe to bring current, and please do that by this time, and if you don't, here's the consequences. There will be fees and there will be late reporting. They knew all that. There's also evidence in the record from Mr. Jensen's testimony deposition that he understood that, and he understood where that $1,074 came from, how that was calculated. So I think I think the bank wins on that issue. But even aside from that, under the mismatch of letters that they sent, he never took any position other than you were delinquent. Is that correct? The bank never took any other position. Correct. Yeah. I mean, the bank over and over and over explained to the Jensen's, here's what happened. Although some of the letters seem to demand more money than the $1,074, even if you impute some interest over time to that. So what do you do with those? So I would agree that the record is not perfect on that issue. And there's an explanation for that, although it doesn't matter for today's purposes, because we're under FCRA. And under FCRA, the duties that the bank has to address credit reporting issues are not triggered until they get a notice of dispute from a credit reporting agency. So that there was communications between the Jensen's and the banks directly, immediately after the failed modification, all the way through the course of this the story of this case doesn't matter. For purposes of FCRA, we don't start paying attention until they dispute their credit with a credit reporting agency. We don't start paying attention. You start paying attention, but it doesn't count, is what you mean. Right. It doesn't count under a claim under FCRA. If they wanted to bring a different kind of claim, then maybe we would be talking about a larger set of facts. But we're under the Fair Credit Reporting Act, and Ninth Circuit case law is very clear that those duties aren't triggered until we get a notice from a credit reporting agency. And so by the time that a notice comes from a credit reporting agency, with regard to Mr. Jensen, all of that history with the bank is over and has been for several months because he they cured their deficiency in April of 2011. He makes his first dispute with a credit reporting agency in December of 2011. And you report at that time that the deficiency has been cleared. Once they paid the deficiency, we stopped late reporting, right. And the bank viewed their account as in good standing and reported it as such from that point forward. So let me ask a question then. Even assuming that the reports had been incorrect, let's assume for a moment that you made incorrect reports to the credit agency, is it your position that once they asked, these guys had already paid the amount, and therefore it doesn't matter whether the reports were correct or incorrect? I think that's Ninth Circuit case law. Okay. Now, I just want to understand your position. Yeah. So really, under your view of the case, it really doesn't matter whether any of the reports were accurate or not, because when you got a request at that point, it had already been cured and you reported that. I suppose there is an argument that if it had been inaccurate and we addressed that, made the investigation, responded back and said, no, we're not changing it and we were wrong about that, that they might have the ability to say from that point forward we suffered damages and here's what they were and we're entitled to cover that. But those aren't the facts of this case. That's not the facts of this case. The facts of this case are right or wrong. When the inquiry came to you, you said there is no delinquency anymore. Right. Okay. Unless there are further questions. Okay. Thank you very much. Thank you, Your Honors. Mr. Baxter, you saved some time. Your Honor, I very much appreciate the reprieve. I'm not sure I've ever had that experience of completely blanking. Your Honor, the document that you discussed in the section of ER-178 is the section that we think is at best vague. I mean, that is the reason why Mr. Jensen called to confirm, and that's why. How do you deal with your opponent's argument, which I think is pretty good, that this is a document that's meant to explain what happens if you get the modification, not what happens if you don't? Well, if that's counsel's explanation, then reasonable minds can differ. But that shows that there is ambiguity. That is why the Jensen's my Mr. Jensen called back, and that's why the unrefuted testimony is that the bank employees confirmed the way he read it is the way they read it, so that allows extrinsic evidence. And we've never heard any testimony from Byron or Ginni or the bank telephone operators to say, no, I didn't say that. Can you respond to counsel's last argument, which I'm not sure I'd understood before she made it today, that banks' obligations are triggered by the request from the credit agency, and that at that point the bank said there's no deficiency? Well, the bank did report deficiencies, and actually inaccurate deficiencies. Well, she's making a separate point, I think, which is that the obligations under the act, which is what you're suing under, are triggered by an inquiry from a credit agency, and when the inquiry was made, whether or not the previous information was correct or incorrect, the bank said any deficiency has been cured. Right. I don't think the Gorman case gets them off the hook. They don't avoid liability simply by responding, and on the facts of this case, even their witness admitted in deposition that the maximum number of months that the bank thought that they were in arrears on reflection was 15 months. So the bank reported the deficiency. Your position is the response should have been, it's been cured, but it was the deficiency wasn't as long as you reported to me. Absolutely. And the months count. There was an e-mail in the record from Mr. Jensen to the bank saying, we're making progress, because they had cleaned up the first two or three months that should not have been reported delinquent. But in any case, even under the bank's assessment, the maximum number of late months was 15, not 18 or 16, as the bank reported and verified to the credit bureaus. But they were accurate of 15 or 16. Well, that's a jury question. Again, it comes back to you. I want to point out that in addition to the TPP modification, which may or may not be subject to the parole evidence analysis, there was a separate loan modification with the employee Jackie. And that doesn't have the similar language or letters or anything like that, just an oral representation that you qualify. And if you do these steps, then you will qualify for a modification and we will clear your credit. So that was a separate modification attempt that also failed due to the bank's error. Okay. Any further questions on the bench? Briefly, if I may, just to address the damages issue. On this record, I think that the court cannot find or the district court cannot find that as a matter of law there were no damages. It may be that it is an incremental subset of the full measure of damages, but the Jensen's put on competent evidence of their emotional distress damages. They showed that they had been denied credit because of derogatory and, we contend, false reporting. And it is for the jury to decide which amount is recoverable under which claims. Let me ask you one other question before you sit down. Is it your position that let's assume that the bank is right, that these amounts were owed at the end of the trial period. If that's true, was there any false reporting? Yes. There was the reporting relating to the trial period. Yes. That occurred at the end. Before that, was there any false reporting if the amount was owed? If the amount was owed. There was also a credit report that reflected a late payment at the very end that the bank acknowledged was not late, May of 2011. So there's another month that was reported and verified as false. And that was struck later by the bank. It was deleted later. Thank you very much. Thank you, Your Honor. I thank both sides for their helpful arguments. The case of Jensen v. U.S. Bank is now submitted for decision.
judges: Walter, Fletcher, Hurwitz